UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Lisa Greger, substitute party for deceased Charles P. Greger, | CASE NO. 1:21-CV-2327 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| Commissioner of Social Security, | Memorandum of Opinion and Order |
| Defendant. | |

**INTRODUCTION**

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Jonathan D. Greenberg ("R&R") (Doc. 11) recommending that the decision of the Commissioner be affirmed. Plaintiff has filed objections. For the following reasons, the R&R is ACCEPTED in PART and REJECTED in PART. The decision of the Commissioner is VACATED. This matter is REMANDED to defendant for further proceedings.

**STANDARD OF REVIEW**

When objections are made to a Magistrate Judge's Report and Recommendation, the district court reviews the case *de novo*. Federal Rule of Civil Procedure 72(b) provides in pertinent part:

> The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

As stated in the Advisory Committee Notes, "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Court held, "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

**PROCEDURAL HISTORY**

Plaintiff Lisa Greger ("Plaintiff") filed this lawsuit on behalf of her deceased ex-husband Charles Greger[1] ("Greger") seeking review of the Commissioner's March 6, 2018 decision denying Greger's application for Supplemental Security Income ("SSI").

Greger had a prior application for disability benefits, which resulted in an unfavorable decision on June 4, 2013 ("2013 Decision"). In the 2013 Decision, the ALJ determined that Greger's severe impairments included status post labrum repair right shoulder, organic mental disorder, depression, and polysubstance abuse in remission.[2] As a result, the ALJ determined

---

[1] Plaintiff's standing to bring this action is not contested by Defendant.

[2] As Plaintiff does not challenge the ALJ's conclusions regarding Greger's polysubstance abuse in remission, the impairment will not be considered here.

Greger had residual functional capacity ("RFC") limitations, including "occasionally" reaching overhead with the right upper extremity and performing:

> simple, routine tasks, *i.e.,* unskilled work. He is limited to tasks with only occasional interaction with the public and only brief and superficial interactions with supervisors and co-workers, *i.e.,* short of duration and for a specific purpose. He would perform best with oral/demonstrated directions in a setting wherein duties are routine and predictable with no high production requirement or fast pace. He is capable of low-stress work, *i.e.* no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

This RFC determination did not result in a finding of disability because a significant number of jobs which Greger could perform existed in the national economy, including custodian and dishwasher.

Greger filed a second application for disability benefits in November 2015. In January 2016, a psychological consultative examination was conducted by Natalie Whitlow, Ph.D. Dr. Whitlow was unable to complete the planned one-hour clinical interview because Greger became irate and refused to answer further questions. As a result, she was unable to provide a prognosis, but nevertheless concluded Greger had no mental health related limitations in any of the four areas of mental functioning which she assessed.

In a decision dated March 1, 2018, an ALJ denied Greger's November 2015 application. The Appeals Council denied his request for review. On September 24, 2018, Greger filed a Complaint in this Court challenging the Commissioner's final decision. By joint stipulation of the parties, the Court remanded the case back to the Commissioner on May 3, 2019. Pursuant to the Order of Remand, the Appeals Council directed the ALJ to "further evaluate" Greger's right shoulder impairment and "[i]f necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from

the claimant's impairments." (Tr. 1593).

Following remand, a new hearing was hearing held. On July 21, 2020, the ALJ issued a new decision finding that, due to his age, Gregor was disabled as of his 55th birthday on April 22, 2020, but he was not disabled from November 15, 2015 to April 21, 2020 ("2020 Decision").[3] The 2020 Decision included a finding that Greger was limited to "frequent" overhead reaching, a less severe restriction than the 2013 Decision. The ALJ determined Greger did not have any severe mental health impairments, as his organic mental disorder and depression "cause no more than a 'mild' limitation in any of the functional areas." (Tr. 1596-97). The new RFC included a mental functional limitation that Greger "would be off task 10% of the time due to exacerbations in pain" related to his low back pain. (Tr. 1602).

**FACTS**

The Magistrate Judge recited Greger's medical history at some length and in detail. The Court will not repeat it. However, the following facts are relevant to the objections in this case, including some of the medical history related to the 2013 Decision.

On August 6, 2008, Greger had shoulder surgery. Immediately following the surgery, he was extubated briefly, but then was reintubated due to acute respiratory failure, wheezing, and hypoxia. (Tr. 1336). He remained intubated for three days following his surgery,[4] and was hospitalized for pulmonary optimization for a total of nine days. (*Id.*). Subsequently, he

---

[3]  Greger's second application indicated an onset date of July 2008, however this date was amended to the date of Greger's application to comply with 20 C.F.R. § 416.335, which states SSI benefits are payable as of the month following the date of application.

[4]  Greger refers to being in a coma during this period, although the 2013 Decision does not specify whether or not he was conscious.

complained of memory loss. (*Id*. at 1337).

Ten days later, on August 26, 2008, Greger was readmitted to the hospital for "altered mental status," after exhibiting memory deficits and experiencing confusion and excessive fatigue.  (Tr. 97-8).  The attending physician noted his history of respiratory failure, and considered diagnoses including "altered mental state due to encephalopathy, prolonged anesthesia side effects and medication side effects." (*Id*. at 98).  Neurological and radiological testing was negative, and Greger did not seek additional treatment for memory deficits after his discharge. (*Id*.).

In March 2010, a psychological consultative examiner performed testing, including the Weschler Memory Scales, and determined that Greger was in the "borderline to extremely low range for the areas of memory tested." (Tr. 99).  He "demonstrated low average long-term memory and short-term memory in the extremely low range."  (*Id*.)  The psychiatrist diagnosed amnestic disorder and cognitive disorder, and opined Greger had moderate limitations in his ability to understand, remember, and follow instruction.  The ALJ gave this opinion full weight because it was consistent with his clinical findings and the evidence as a whole.

During the period relevant to this application, psychologist Natalie Whitlow, Ph.D., examined Greger at the request of the Commissioner on January 12, 2016.  Dr. Whitlow performed no testing, but observed that Greger was "unable to recall details related to his work history," and his "thought processing appeared to be inappropriate as he reported having and presented with poor memory." (Tr. 1126-27).  She noted that he could not recall where he last worked, and refused to provide information about his activities of daily living.  Greger

informed Dr. Whitlow that pain prevented him from working, and that he had depression which was treated with medication. Greger also told Dr. Whitlow that he had significant memory problems:

> My memory problems started after my third surgery; I went into a 5-day coma and after that I've had problems with my memory. Half of what happens here today I won't remember tomorrow, I can't go home and tell my wife what happened here today because I'll only remember bits and pieces, I need a list to remember to do anything.

(*Id*. at 1125). Dr. Whitlow described his affect and communication as "stable and appropriate during the clinical interview," although she noted that the interview ended early because Greger became "irate" and refused to provide any further information. (*Id*. at 1127, 1129). She described his thought processing as both "stable and appropriate" and "inappropriate as he reported and presented with a poor memory." (*Id*. at 1127, 1129). She concluded that "[f]rom a mental health perspective, the claimant does not appear to have limitations" in any of the four functional domains that she assessed. (*Id*. at 1129-30).

On January 15, 2016, state agency reviewing psychologist Karla Voyten, Ph.D., reviewed Dr. Whitlow's report as well as Greger's Cleveland Clinic treatment records, and concluded that Greger met the criteria for affective disorders, but had only mild limitations in function. (Tr. 117-18). She did not mention the prior finding of organic mental disorder in her opinion. State agency reviewing psychologist Bruce Goldsmith, Ph.D., adopted the opinion of Dr. Voyten on April 19, 2016.

Medical treatment records also document continuing memory impairment. At a 2018 visit, his doctor noted Greger did not remember seeing him in 2013 or 2016. (Tr. 1849). At a February 2019 "comprehensive problem evaluation," Greger reported poor memory since a

6

medically induced coma after surgery more than 10 years ago. (*Id*. at 1868).

Greger also reported continuing pain from his shoulder injury. Prior to the relevant period, Dr. Shroyer, Greger's orthopedist, noted continued pain and limited mobility, which was treated with steroid injections. In December 2014, Dr. Shroyer noted Greger still had shoulder pain, but "periodic injections are helpful" and Greger had regained "satisfactory strength." (Tr. 1252, 1255).

During the relevant period, treatment records reflect that Greger did not return for additional shoulder injections or report shoulder pain, although he repeatedly received care for back pain, with the following exceptions. In March 2016, Greger reported to Dr. Hsia that his woodworking was limited by his shoulder pain as well as back and quadricep pain. (Tr. 1500). In March 2020, Greger was evaluated for chronic pain, and reported that his shoulder hurt the most. (*Id*. at 1894). On examination, Mariana Tudico, PA, found pain with any range of motion of the right shoulder. She recommended physical therapy and referred him to sports medicine.

### ANALYSIS

Plaintiff objects to the R&R on three grounds. Each will be addressed in turn.

#### 1. Mental Health Impairments

Plaintiff contends that the Magistrate Judge erred in recommending that the ALJ correctly determined that res judicata did not apply to Gregor's mental health conditions. Specifically, she objects to the ALJ's determination that there was a significant improvement in Greger's organic mental disorder, which the 2013 Decision identified as a severe impairment that caused significant functional limitations in memory. She argues that

7

substantial evidence does not exist within the record to support the ALJ's conclusion that this impairment was no longer severe.

The Sixth Circuit decision in *Drummond v. Commissioner of Social Security* established that the principles of res judicata are sometimes applicable to social security claims. The court explained that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). In a subsequent decision, the Court clarified that *Drummond*'s application of the "principles of res judicata" only applies when a subsequent application covers the same period of time as a previously adjudicated claim. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932-33 (6th Cir. 2018). There, the Court explained that:

> Had Earley filed a second application for disability benefits for ... the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only "foreclose[s] successive litigation of the very same claim."

*Id.* at 933 (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

It is undisputed that the 2013 Decision covered a different time period. Therefore, res judicata does not apply. However, the principles of res judicata referenced in *Drummond* - "[f]inality, efficiency, and the consistent treatment of like cases" - remain central to the Court's analysis. *Id.* *Earley* does not require a finding of an "improvement" in a plaintiff's condition, but instead requires that the ALJ give the evidence a "fresh review." The *Earley* court made clear that, in this review, an ALJ should not "completely ignore earlier findings

8

and applications." *Id.* at 934, *see also Dobbs v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-11903, 2019 WL 4196505, at *7 (E.D. Mich. Aug. 19, 2019), *report and recommendation adopted sub nom Dobbs v. Comm'r of Soc. Sec.*, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019) ("Notably, *Early* [sic] does not require a finding of an 'improvement' in Plaintiff's condition, but that the ALJ to give the evidence a 'fresh look.'"). *Earley* cautioned that "[f]resh review is not blind review," and "*absent new and additional evidence*, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application." *Id.* at 933-34 (emphasis added). At the same time, the *Earley* court instructed that collateral estoppel would rarely apply to applications covering different time periods because the issues would not be identical:

> [H]uman health is rarely static. Sure as we're born, we age. Sometimes we become sick and sometimes we become better as time passes. Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have "actually litigated and resolved" whether a person was disabled at some later date.

*Id.* at 933.

This Court concurs that neither res judicata nor collateral estoppel required the ALJ to adopt the findings from the 2013 Decison. *See id.* at 933-34. Plaintiff's objection to the contrary is rejected. However, *Earley* requires that the ALJ give the case a "fresh look," and specifically instructs the ALJ that the prior ALJ's findings cannot be ignored in reviewing the second application. *Id.* at 933-34.

In the 2013 Decision, the ALJ determined at step two that Greger suffered from the severe impairment of organic mental disorder. In the 2020 Decision, the ALJ acknowledged that the 2013 Decision found that Greger had severe mental impairments including depression,

9

polysubstance abuse in remission, and organic mental disorder. However, in the 2020 Decision, the ALJ discussed Greger's organic mental disorder collectively with the other previously identified mental impairments, referring to "claimant's mental condition" or "mental health symptoms" without acknowledging that the prior ALJ found that organic mental disorder caused distinct memory impairment. Plaintiff challenges the ALJ's decision to reject the finding in the 2013 Decision that organic mental disorder is a severe impairment, and argues that it is not based on substantial evidence.

At step two, the Commissioner must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The Sixth Circuit has described the step two analysis as a "*de minimus* hurdle," explaining, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, then the ALJ must treat it as "severe." Soc. Sec. Rul. 96–3p, 1996 WL 374181 at *1 (1996).

The 2013 Decision concluded that Greger had the severe mental impairment of organic mental disorder. The ALJ supported this finding by noting Greger's complicated recovery from the 2008 shoulder surgery, including the extended period of intubation, and his readmission ten days after discharge for "altered mental status" consisting of confusion, memory deficits, and excessive fatigue. (Tr. 95, 97-8). The ALJ also relied on a 2010 consultative psychological evaluation which included testing that demonstrated Greger's long-term memory was in the low-average range and his short-term memory was in the extremely

10

low range. (*Id*. at 99).

The current ALJ acknowledged the prior ALJ's findings, but her step two analysis found "that there is no objective evidence to support a medically determinable impairment to explain the claimant's complaints of memory loss." (Tr. 1597-98).  This is in direct contradiction to the 2013 Decision, which identified organic mental disorder as a medically determinable impairment which caused this symptom.  The current ALJ failed to acknowledge this conflict.  She explained her finding that Greger's organic mental disorder was now nonsevere was based on "new and material evidence documenting a significant change in [his] condition," including the reports of consultative examiner Dr. Whitlow, the opinion of a state agency psychological reviewer, and records of Greger's treatment for depression. (*Id*. at 1596).  This explanation is inadequate for two reasons.

First, none of these sources acknowledge or address Greger's history of organic mental disorder.  It is not clear from the record that Dr. Whitlow was asked to assess Greger's organic mental disorder.  The only mental health diagnosis Dr. Whitlow identifies is "Unspecified Depressive Disorder," and neither the Personal History or Prior Medical History sections of her report acknowledge the prior diagnosis of organic mental disorder.  It is not clear that she was aware of the cognitive issues relating to Greger's 2008 surgery, and there is no basis to conclude that she assessed him for organic mental disorder.  The medical treatment records cited by the ALJ are also limited to depression, and do not mention organic mental disorder.[5]  Greger's mental health treatment during the relevant period was limited to depression

---

[5] The records do, however, document continuing memory impairment. (Tr. 1849, 1868).

11

medication prescribed by a general practitioner. The state agency psychological reviewer based her opinion on that evidence, and did not acknowledge or address the prior ALJ's finding of organic mental disorder.[6] Further, the ALJ fails to bridge this logical gap, and does not explain how the opinions and records relating to Greger's treatment for depression are "new and material evidence" establishing that his organic mental disorder is no longer a severe impairment.

Second, while it is true that Dr. Whitlow concluded Greger had no limitations in any mental functional area, this conclusion is unsupported by explanation and is inconsistent with the observations recorded in her report of the examination. For example, Dr. Whitlow observed that Greger's "thought processing appeared to be inappropriate as he reported having *and presented with* poor memory." (Tr. 1127 (emphasis added)). She also noted he was "unable to recall details related to his work history." (*Id*. at 1126). Greger also told Dr. Whitlow that he had significant memory problems:

> My memory problems started after my third surgery; I went into a 5-day coma and after that I've had problems with my memory. Half of what happens here today I won't remember tomorrow, I can't go home and tell my wife what happened here today because I'll only remember bits and pieces, I need a list to remember to do anything.

(*Id*. at 1125). Despite these reports and clinical findings, Dr. Whitlow's assessment in all four functional domains repeated the same bare statement: "From a mental health perspective, the claimant does not appear to have limitations on this functional assessment area." (*Id*. at 1129-30). On its face, her clinical findings are inconsistent with her conclusion that he had no

---

[6] Again, it is unclear whether Dr. Voyten was aware of this prior diagnosis as she does not mention it anywhere in her opinion.

limitations in his ability to understand, remember, and carry out instructions. Further, Dr. Whiltow's statement that Greger "reported that his symptoms do not impair his ability to effectively engage in the work world," is inconsistent with his report that he would only remember bits and pieces of the clinical interview, and needed a list " to remember to do anything." Neither Dr. Whitlow nor the ALJ acknowledge or explain how this evidence supports their conclusions. Therefore, the ALJ's step two finding is unsupported by substantial evidence. This is especially so given a claimant's *de minimis* burden at step two.

Even where an error occurs in a step two analysis, however, remand is often unnecessary if other impairments are found to be severe. This is because an ALJ must take into consideration all impairments, both severe and nonsevere, in formulating the RFC. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). The regulations make clear that although a nonsevere condition "standing alone may not significantly limit an individual's ability to [work], it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5. Further, "it is for the ALJ to make this determination and provide an explanation in the first instance, not this Court." *See James v. Comm'r of Soc. Security*, 2020 WL 836493, at *11 (N.D. Ohio Feb. 20, 2020); *see, e.g., Harrington v. Saul*, 2021 WL 3174273, at *10 (N.D. Ohio July 9, 2021) (recognizing that claimant's chronic vomiting, even when considered in combination with other impairments, may not require any additional workplace restrictions, but finding that "the ALJ's failure to

consider [claimant's] chronic vomiting at subsequent steps in the sequential evaluation is a legal error that nevertheless requires remand") (citation omitted).

Here, however, the ALJ did not consider Greger's organic mental disorder at later steps of the analysis, and therefore no record of her reasoning exists to compensate for her error at step two. The ALJ erroneously concluded at step two that there was "no objective evidence to support a medically determinable impairment to explain the claimant's complaints of memory loss," and omitted any consideration of Greger's organic mental disorder in her RFC analysis.[7] (Tr. 1597-98). This omission is a legal error that requires remand.[8]

Substantial evidence does not support the finding of non-disability because the ALJ failed to adequately explain her evaluation of evidence showing that Greger had a severe impairment of organic mental disorder, and did not consider the effects of this impairment on

---

[7] In contrast, the 2013 Decision explicitly states that the ALJ took Greger's "organic mental disorder into consideration" in the RFC determination "by limiting the claimant to simple, routine, low-stress tasks with limited personal interaction." (Tr. 92).

[8] The Court is aware that the 2013 Decision determined that the limitations resulting from Greger's combined mental health impairments, including organic mental disorder, did not result in a finding of disability. It does not appear to the Court that the record before the ALJ in the 2020 Decision showed any indication of decline in Greger's mental functional capacity since that time. Although it may be unlikely that the Plaintiff can succeed on remand, the ALJ must decide this issue in the first instance. The Court is not permitted to substitute its judgment for that of the ALJ. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (reviewing court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")

his ability to work.  Accordingly, remand is required.

### 2. **Right Shoulder Impairment**

Plaintiff also argues that the Magistrate Judge erred in concluding that the ALJ properly applied res judicata in evaluating Greger's right shoulder impairment.  Again, she asserts that the findings from the 2013 Decision should have been adopted in the present case.  Here, however, her objection is not well-taken.

The analysis regarding application of res judicata to the mental impairment findings from the 2013 Decision is equally applicable to the findings relating to Greger's shoulder impairment.  The 2013 Decision covered a different time period than the relevant period in this case. Therefore, the ALJ properly conducted a de novo review of the record, which included a discussion of Greger's shoulder surgeries and the findings in the 2013 Decision.  However, the issue of whether the ALJ's findings are supported by substantial evidence remains.

The ALJ discussed a variety of treatment and imaging records in explaining her conclusion that Greger's right shoulder impairment had improved.  Greger initially injured his shoulder at work in 2006, and was treated with multiple surgeries in 2007 and 2008.  The ALJ noted that during 2013 and 2014, his shoulder pain was treated with steroid injections.  In November 2013, Dr. Shroyer, Greger's orthopedist, noted poor mobility, pain, and weakness in his right shoulder. (Tr. 1270).  In December 2013 and May 2014, Dr. Shroyer noted "mild restriction" of active and passive mobility in his right shoulder. (*Id*. at 1266, 1263).   In December 2014, Dr. Shroyer noted Greger still had shoulder pain, but "periodic injections are helpful" and Greger had regained "satisfactory strength." (*Id*. at 1252, 1255).  Treatment

records from subsequent years reflect that Greger did not return for additional shoulder injections or report shoulder pain, although he repeatedly received care for back pain. Treatment records for his chronic back pain show that he regularly denied any shoulder joint pain or limitation of range of motion from 2015 - 2019.

As the Magistrate Judge explained, all of this constitutes more than a mere "scintilla of evidence" supporting the ALJ's finding that Greger's right shoulder impairment was "improved." Specifically, the treating orthopedist documented improvement in Greger's shoulder function between September and December 2014, and subsequently Greger sought no further treatment until March 2020. Although Plaintiff objects that the treatment notes were "vague" because they failed to define terms like "helpful" and "satisfactory," the plain meaning of these terms is consistent with the conclusions drawn by the ALJ.

Plaintiff again argues that other record evidence supports a finding of greater limitations.[9] However, even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The ALJ identified substantial evidence supporting her findings

---

9    For example, at his October 2018 hearing, Greger testified he could not lift his right arm over his head, and lifting his left arm was a chore. However, Plaintiff acknowledges that he sought no treatment at that time. It was not until March 2020, one month before the ALJ deemed him disabled, that Greger again sought treatment for "chronic right shoulder pain" and requested an injection. His treatment provider noted he had pain with any range of motion of the right shoulder, and although he was not provided with an injection, he received a referral to physical therapy and pain management.

regarding Greger's shoulder impairment, including her determination that his condition had improved since the 2013 Decision. In the period covered by the 2013 Decision, Greger received multiple surgeries on his right shoulder and regular treatment for right shoulder pain. In contrast, during the period covered by the current application, he initially had only "mild restriction" of movement in his shoulder, and after this was resolved, received no treatment for shoulder pain for five years. The ALJ reasonably found that his testimony regarding his shoulder impairment was inconsistent with his lack of any treatment for that ailment, particularly since he was receiving regular care for back pain at that time. Therefore, Plaintiff's objection is not well-taken.

### 3. Residual Functional Capacity Determination

Because the Court has found that the ALJ must reassess and more fully explain her determination regarding the severity and functional effects of Greger's organic mental disorder, on remand, the RFC determination must also be reassessed and modified to reflect limitations, if any, resulting from Greger's organic mental disorder.

### CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge is ACCEPTED in PART and REJECTED in PART and the decision of the Commissioner is VACATED. This matter is REMANDED to defendant for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
                                              United States District Judge
                                              Chief Judge

Dated: 1/26/23